For our next case, Jennifer Zuch v. Commissioner Internal Revenue May it please the court. My name is Jeff Derman. I'm here on behalf of Appellant Jennifer Zuch. I'd like to reserve three minutes. We're not going to be hewing through the clock all that closely in this case. There are a lot of questions for both sides. Yes, Your Honor. You'll get your three minutes, too. I'm sure Your Honors are aware this is a tax case involving what we contend to be several procedural missteps by the IRS that have prejudiced our client. At one point, the taxpayer filed a tax return. Let's dive in. Why don't you just get right to the point and address the argument that there's really nothing that can be done for your client at this point by the tax court. They don't have the jurisdiction under 6330 proceedings to give a refund. It's done. That's like, you know, there's a whole lot of numbers getting thrown around, code sections, this, that, and the other thing, tax here, this, tax here, that. But at the end of the day, I understand the argument to be tough luck. We got your money. Go away. So, Your Honor, I would agree with you that that is what the court based its mootness decision on, but we would respectfully say that that is incorrect because there were still issues that the court could decide. So in the collection due process realm, the taxpayer is entitled to raise certain issues before the IRS office, independent office of appeals. Including the underlying liability. Including the underlying liability, yes. Okay. Separate and apart from the collectability issue. What is, what could be, before we get to that, what is the fact with respect to whether or not Ms. Zook ever got a deficiency notice? I think I understood you to be saying she didn't know anything was awry until the notice of levy hit, but maybe I'm wrong about that. No, that's correct, Your Honor. So, so the position is she didn't get a deficiency notice. Correct, Your Honor. Okay. And am I correct that the way the system works is there's two ways you can get to the tax court. One is you get the deficiency notice and you go to the court and you start arguing at that point and they've got power to give you a refund under those circumstances. And the other way you can end up there is through this 6330 proceeding collection due process hearing. Those are two ways to get to the tax court. Those are two of the ways to get to the tax court, yes, Your Honor. Okay. Now, do you agree or disagree that the tax court, well, that Greene-Tapete says the tax court doesn't have jurisdiction to give a refund? I believe that... In a 6330 proceeding. The distinction is between the two small subsections of section 6330, which is section 6330C1A and C1B. That's the distinction that I think the court failed to draw. So when you say that's the distinction it failed to draw, you're arguing that it does have refund power under 6330 and they just were wrong. Yes, under the scenario of the underlying liability cases, the 6330C2B cases. What in the statute, though, allows that? I mean, there are these two separate tracks here. So tell me statutorily what gives them the power to do that. What gives the tax court the jurisdiction to hear the case? I think you've got to start at the beginning of section 6330, 6330C. 6330C provides that the Office of Appeals has to verify the bona fides of the assessment, and then 6330C2A and B provide what issues can be raised in CDP. Right. And none of those things say, and you can get a refund. Right. Once that, once you've raised those issues, once you fall into one of those categories, like we contend here that we fall into the second category of the underlying liability case. From that, the appeals officer from the Office of Appeals makes a notice of determination with respect to those issues, the C1 verification issue, the collectability issues under C2A, and then the underlying liability under C2B. From that, the taxpayer has the ability to petition the tax court for review of such determination. So in our view, such determination. Okay. So they can review it. Where can you point us to where it says, and you can get a refund? Well, I think it's in the, I think 60, so I think the holding in Green-Tapiti, where we extend this no refunds in tax court in the 6330 proceedings, kind of misfires and misstates where underlying liability cases fall within the entire, not only deficiency parts of the code, but the 6330 collection parts of the code. The remedy that you want is ultimately the refund. I mean, even if you're able to look to the statute and say, look, there's a separate section that deals with liability. There's an independent issue that can be addressed, and there's a separate determination as to that liability. That only gets you so far, right? So say in your ideal world there's a determination of no liability. Since the tax court is a court of limited jurisdiction, don't you need to point to a particular statutory provision that allows for refund authority in this circumstance? Well, so I'm not sure that I would agree with that. I know that the Green-Tapiti court focused on the fact that 6512 does provide refund and overpayment jurisdiction in deficiency cases. I think the analysis is that the underlying liability cases in CDP are analogous to deficiency cases. These are taxpayers who did not receive. The difficulty I have is that statute set up two distinct tracks here, and it would seem odd to say that you can borrow some of the power and some of the authority from one track over to the other. You know, I get it. Maybe it would make the system more logical, but we're up against some issues of power, authorization, jurisdiction here, and I'm sure your friend on the other side is going to talk about them. I'd like to know if you see some toehold in the statute here. Within the four corners of Section 6330? No, I would say that in underlying liability cases, Section 6330 does not explicitly say there's refund jurisdiction or there is overpayment jurisdiction, but I think the Supreme Court recently in a case called Boeckler kind of relaxes that somewhat. Boeckler actually makes the jurisdictional boundaries pretty – I mean, it says, okay, there are a bunch of limits that may be mandatory and not jurisdictional. That's true. It depends on how it's phrased. But the two examples it gives are things that are jurisdictional are actually tax code examples. Yeah, so what you're really arguing to us, it sounds like, is, gee, this refund power must be implicit. Otherwise, why are they dealing with the underlying liability? I think that's right, Your Honor. Isn't the answer to that, though, we allow you to bring up underlying liability because it's in the context of a levy, and if you can show that you really don't have an underlying liability, you can stop the levy. That's the relief you get. Well, I don't think that it is within the context of a lien or levy. I think 6330 – 6330 is about, isn't it? Well, 6330C2A specifically references with respect to the lien or levy, with respect to spousal defenses, collection alternatives. Section 6330C2B, dealing with underlying liability, doesn't have the whole section. 6330 is titled Notice and Opportunity for Hearing Before Levy. That's the whole point of the section, right? It's not just some peculiar subsection. This CBP hearing is something that looks like Congress set up as a sort of a safety valve. If the IRS messes up and doesn't give you your notice of deficiency and they start to levy on you, this is what you can do to stop those IRS folks from coming and taking other stuff, taking your property. Here's the route you can get into tax court on that. That's how it appears. Do you have a different view of what 6330 is doing? Well, I think in this specific context, I think Congress specifically bifurcated the two aspects that you could raise in CBP and then go to tax court with. I think that when Congress gave taxpayers the ability in CBP to challenge the underlying liability, it was to correct a mistake, an omission that the IRS made in the first place. I don't think Congress intended to give taxpayers less protections just because by no fault of their own, they didn't receive a notice of deficiency like they were supposed to when there was a deficiency proceeding. Can I make sure I understand correctly the way the statute is supposed to work? Because the ability to challenge liability is only if you didn't get notice of deficiency. Correct. But even if you got a notice of deficiency, you may end up in a CDP hearing. That's correct. So if we look back, and I'd like to get the government's respect on this too, if we look back to section 6213, 6213 has, you know, it's A and B, A dealing with notice of deficiency and B dealing with a different situation where there's like a notice in demand, right? So the notice of deficiency under A seems like that gives you a route. You get to test liability. You get a determination about that. And in doing that review, there is refund power, right? Yes, Your Honor, under 6512. So why shouldn't we understand B, or should we understand B the way it's written to say that if you aren't getting that, in the case of, you know, a different kind of error, that in that circumstance, that the notice you get isn't going to be treated as a notice of deficiency for purposes of 6512A. 6512A is the provision that says the tax court doesn't have power to refund. In other words, should we be reading this to say, like, well, by negative implication, for a later proceeding where the tax court does get to review liability, that it retains that power when that power is stripped for those who received a notice of deficiency because they already had one shot at it. But if you've never had, you know, like, a single bite of the apple, then that is retained by the plain language of B1 and the way it's interacting with 6512A. Is that a plausible way to read these statutes, or am I misunderstanding how they interact? I'm sorry to interrupt you, Your Honor. I think that that is correct. I think that by, I think, and if I'm not understanding your question correctly, I'm sorry. But I think by implication, when Congress used the words in 6330CCB, notice of deficiency, it was implicating the deficiency, the standards in a standard deficiency case would be applicable to people who didn't get that opportunity in the first place. So a taxpayer who doesn't get a notice of deficiency isn't just left with no remedy to challenge the IRS and be heard with respect to how much they actually owe. And I think part of that also goes to 6330C1 with respect to verification, essentially verifying the bona fides of the assessment that the IRS is seeking to collect. Because at least in the collection purview, what could be more important for a taxpayer than to not pay more than what the IRS is actually owed? That's why verification exists. So to take it back to the original question of mootness, I think that verification of the assessment, I don't think it goes away. That's a good argument. And, in fact, in your reply brief, you cite the Vigon v. Commissioner case, but you don't grapple with the footnote that's in that case, which where the court said in footnote 4, unlike in this case, the green patente involved a liability that had been satisfied, not merely abated, and the Commissioner had represented there would be no further collection action. In other words, it appeared that the court in that suit, the tax court there, was saying, yeah, we agree, we're not accepting the IRS's assertion that this case is moot when there's still a liability, an underlying liability to figure out. But green v. patente is different because there's no other action the IRS could or would take. Now, is that your case, too? They seem to be arguing there's nothing else we're going to do. We've got your money. So, ha-ha, we're done, and you're done, and there's nothing you can do about it, and green v. patente says there's nothing you can do about it. How do you get around that assertion? Your Honor, I agree with you. That is what the government is asserting in this case, but I don't think that they're litigant to the case. I don't think they get to make the decision whether they don't get to influence or decide whether the tax court continues to have jurisdiction over the case. Don't they have that by their statutory authority to do an offset and a preclusion of review on the propriety of that offset? Well, what I would say to that is there's two things to get the taxpayer into tax court in the Section 6330 proceeding, a notice of determination and a timely petition filed in the tax court in response to the notice of determination. At that point, the tax court has jurisdiction over all of the matters that were raised and discussed in the CDP hearing. That's given. What we're trying to figure out is do they still have jurisdiction if the IRS can declare, as it does here, hey, we're done, we don't need anything else from you. We took your money. We've got it. We don't need anything else from you. There's nothing else for the tax court to decide. Now, I understand you're saying there is something for them to decide, so I don't want to put words in your mouth. Are you saying that we could still get some kind of declaratory relief here? We're entitled to have somebody tell us whether we actually have a deficiency. It's never been decided. The tax court had jurisdiction to decide that, and the IRS doesn't unilaterally get to deprive us of that determination. Or are you saying, or does your whole case rise and fall on refund? If there's no refund and we've said there's no refund power, you'd say, yeah, I'm out. No, I think, Your Honor, in the first instance, you stated it correctly. It doesn't rise and fall on just the refund issue. It rises and falls on we believe that under 6330C1, under that verification, the court is obligated to verify the bona fides of the assessment. The court could still say this assessment is bad. It shows a notice of deficiency. Is that the relief? When you say, and you do, that the court could still give meaningful relief to the non-moving party, what's the meaningful relief? Well, number one, that's part of it, verifying the bona fides of the assessment. I think at that point— Is this an advisory opinion? I don't think it is because I don't think the case is moot, and I think that while there might be Title 26 issues with respect to pursuing the refund, let's say in a different form like the District Court or the Court of Federal Claims, I think, and I don't— So hold on. So is the argument then it's not advisory because they have the power to make this declaration and that would have some race judicata effect, which would be significant on other avenues we could pursue? Yes, Your Honor. I think that should the tax court have found what we had wanted them to find, that this is a bad assessment and that over the course of these years these offsets should not have occurred, well, the assessment would go away. And this has not been decided by the tax court, so I don't—I'm just—this is my opinion, that the taxpayer might have some relief under the Tucker Act or the Small Tucker Act. These are purely statutory arguments, right? You're not making any argument there's a constitutional right to a pre-deprivation CDP challenge. No, I'm not, Your Honor. Okay. You're not aware of any basis. I haven't been able to find one. I'm not, Your Honor. Okay. How about—let's talk about mootness here. I mean, it's weird. This isn't Article III, but if we say it's moot, there's no race judicata effect, it's not a final judgment on the merits, you can go over and sue in deficiency. I mean, we have to talk about what that does with timeliness, does it toll it, does it count as an informal claim or something. So you might have some logistical issues. Maybe your friend on the other side will speak to that. But you're not out of luck if we rule that it's moot under Greene to Petty, right? I mean, you have a challenge to Greene to Petty, and feel free to speak to that. But you do have a backup argument here that Greene to Petty doesn't close the other door to you, right? Well, in a way, within the four corners of Greene to Petty, I don't think it doesn't say you can't go sue for a refund in district court. But because of the application of Greene to Petty in this case, and because of the amount of time that it took— Yeah, it's a hassle, IRS delaying tactics, were they right to offset? There's a bunch of stuff that looks inequitable maybe, but it's not a bar to doing it. Well, but statutorily, the refund claims based on these offsets have expired, right? Well, what if—I mean, in Ahmed, we said that a petition ostensibly filed under 6330 could also be viewed as being filed under a different section. So why wouldn't it be reasonable to treat the petition here as a sort of informal demand for a refund? And wouldn't that then stop the clock? Well, I'm not aware of any case that says that, Your Honor. I think the Fifth Circuit has played with this idea that if you wound up treating it as a different kind of filing, then it could stop the clock for you and deal with some of the timeliness issues. I think Powell in 2000—we'll hear from maybe the government's lawyer, but we could liken it to a pleading and fixing a technical deficiency, and that would relate back to the time that you first filed suit. And then that would prevent you from being out of time to pursue the deficiency remedy. Well, that's actually—before you say yes to that, if I can—sorry. As a matter of fact, would that fix the timeliness issue? If your request for a hearing before the appeals officer was made—was determined to be the equivalent of an informal claim and it stopped the clock, would that be a refund action in the district court timely or not? So I'm answering this as a purely hypothetical. I would imagine that it would. If it is a refund claim and the statute's been told until the case has been decided, then yes, I would imagine that it would be. But I'm not aware of an avenue for a taxpayer to do that. Hypothetically, if we said that, the timing that historically exists here is such that you would still be able to make your refund claim at district court. Is that right? If the petition—so what I think Your Honor is saying is if the petition in the tax court is treated as a refund claim, which, again, I'm not sure that you can do that— We can do it. We're not sure we can do it. We're throwing ideas around. But if Your Honor is saying that the statute is told through the pendency of deciding this case, then I think the statute would start then. I think that's the same kind of argument I was making before when I referenced the Tucker Act. Once the court decides—if the tax court had decided the issue, even though we're past the Title 26 refund statute— is it really that unusual—and we will certainly be asking Ms. Avedon this— is it really that unusual to say, yeah, the clock should stop because, in fact, 6330, as you've quite rightly pointed out, lists a whole series of things that the court is supposed to do, the tax court, and can do, none of which happened here, and that if the court actually does those things and it turns out that your position is correct and Ms. Zook owes nothing, then if she indeed owes nothing, it should logically be the case that there never was a proper offset. It was never proper to start with, and therefore the claim really couldn't properly be said to have accrued because their action was wrongful from the start. Do you understand what I'm trying to say? I think so, Your Honor. That was a gentle way to say, I have no idea what you're saying. No, isn't there—even if it's not equitable tolling, which we don't have the power to do, there's, in fact, a real claim that's being made here, and we don't know whether the claim has legs or not until they assess the underlying liability. Yeah, and I think that's what I was trying—probably unartily trying to say before, that you are kind of treating the case as a refund claim when these offsets are made, so that at the end of the case, that would start the clock, I think, on— Even if they can't give you a refund. But that would start the clock on the taxpayer being able to go to a different forum, such as the district court. And doing—thinking about it in terms of a relation back to the original filing, if you use an informal refund demand, that's something separate than an equitable tolling. Right. Tolling has brought down issues, and there are some statutes that cut it off, but a relation back isn't—it's a different creature. Right? I swear you want to say yes. Yes, sir. I'm trying to process questions from your face, but yes, sir. Can I ask you to just step back for a second? Because I understand your arguments and some of the equities that go with saying, look, even if you're going through this the first time at the 6330 hearing, there should be the opportunities for review of liability on the merits, and if it's determined there's no liability, a refund given. But in the scheme of things, let's put aside the concern about timeliness for your particular client and the ability to go to district court to seek a refund. What is the—is there really a burden to the taxpayer if you can't raise this in the 6330 context, as long as there is the availability of the refund at a hearing before the district court at a later date? In other words, are you making arguments that it's either proper under the statute or it's required under the statute or simply as a matter of fairness to be able to raise challenges to liability and get a refund in the context of the 6330-type proceeding? Or are you only raising that because in this particular case, you have timeliness concerns about a refund action later? No, I think that the reason that just simply prosecuting the deficiency case later in district court is not necessarily the answer, because I think Congress contemplated that when they enacted Section 6330, when they gave taxpayers the opportunity to prosecute both claims, the collectability and the underlying liability in tax court. Section 6330 is supposed to be remedial legislation. It's supposed to provide fairness and help taxpayers who are fighting against the government. In terms of equities, I would argue that making a taxpayer such as this, or in tax court, many taxpayers are pro se, making them prosecute their case in two different forms at two different times is not what Congress intended with Section 6330. It was supposed to be kind of like a one-stop shopping for resolving your tax year before the tax court. Not written quite that broadly. I mean, you have to import 6512B1 and B2. Congress knew how to write that. It wrote that for deficiencies. It didn't write that for CDP. Yes, I think you're pointing out that within the four corners of Section 6330, it does not specifically incorporate 6512, but I think... It's not just that it doesn't incorporate it. It's that in another section, it does. It's pretty explicit what 6214E, that cross-reference section, says that when you're dealing with a deficiency, hey, go to 6512B2 and you can get a refund. That gives you the power to do a refund. They know how to do it. They have done it. They did it in the deficiency piece. They didn't do it in 6330. So it's not just, I mean, that doesn't look like an oversight. That looks like something deliberate, doesn't it? Well, I don't think that it is, because I think the practical effect of that is that taxpayers, through no fault of their own, end up getting less procedural protections under 6330 than they would under 62, under the regular deficiency procedure. As long as you do process, whether it's as much process as you want, you're done. And you conceded there's no constitutional right to a pre-deferbation CDP challenge. Until the 90s, there was none, and you're not saying that system was unconstitutional. So Congress gave you more ability by going through this avenue, but the availability of 6330 is at least enough constitutionally to give you that right later. I mean, there's some timeliness issues. We've got to talk about how this right survives. But if you don't have a right to 6512 at all, I don't see how we have to graft on this additional avenue that's available in 6330 and say, no, you have to get it earlier during CDP. Well, I agree with you on that. But what I would say is that Congress does provide that taxpayers should have this opportunity to challenge the actual amount and that deficiency. That's a different issue, right? That you do have the – it does say you have the right to challenge, and that's what Vignon – or Vigon says, too, right? Okay. We wouldn't necessarily expect 6330 to make provision for a refund authority because 6330, as we discussed a little earlier, it deals with both kinds of claims that are coming through. It deals with those that started with the notice of deficiency and already went through a process where there was review of liability with the power to refund. So 6330 wouldn't be the right place to say, again, there's power to refund because that's already been dealt with – it's been dealt with separately. It's been dealt with separately for the notice of deficiency, right, under A. And, you know, as we discussed earlier, if it's appropriate to think about subsection B as pointing to and cross-referencing 6512B, then that's a way of reading the statute to give whichever PAC providing for that jurisdiction to provide a refund, right? I think that – but I think 6330C1A specifically limits it to the lien and levy action. So it would be one – there's only C1. I'm sorry, C2A. I'm sorry, Your Honor. That tract of cases, cases where the taxpayer already received the notice of deficiency and received this procedural right to challenge the IRS's determination that they actually owe the money, once the IRS has, in fact, taken their money from them, the case would go away. And that's what Green-Tapiti says, but I think the distinction between underlying liability cases and straight collectability cases, I think you do have to draw a line between the two. It's two separate tracts. So I think that, yes, in the – probably more often the case collectability case that comes to CDP and then the tax court, if the liability is paid, whether it's over time or abated or whatever the case may be, that, yes, the question is no longer before the court and the case is moved. But I don't think that Congress intended for taxpayers to never get this right to challenge the actual bona fides of what the IRS is attempting to collect. But that seems to be – now we're back to that. That seems to be – it feels like you're arguing two issues and putting them together. It could be the case that Congress meant for you exactly to have that right, and that's what the Biggin case is saying, if I'm saying the name, Vigon or however you say that. When the IRS tried to declare that case moot, they said, no, there's a right to have this determined. But they also, in that case, said, and separately, there is not a right for a refund here. That's what they said in the footnote. So maybe this comes down to the question of what does it mean – what does mootness mean? Is this a jurisdictional thing? Is it a prudential thing? But we'll – we've had you up there for a long time. We'll have you back on the phone in probably more than three minutes. Thank you. Afternoon, Your Honors. May it please the Court. Julia Vetta for the commissioner. It represents a fundamental misunderstanding of the CDP statute to read the ability to challenge an underlying liability,  as the camel's nose under the tent that admits whole hog, longstanding, procedurally well-documented and complex procedures for obtaining a refund of a tax already paid. CDP was never intended for that purpose, as you have recognized. So let's just say we were ready to agree with you on that, that you don't get a refund here. Why does that make this case moot? Why is it not the case, Ms. Vetta, that NZUC is perfectly entitled to what amounts to declaratory relief? There is no declaratory relief available to the taxpayer in this context. I shall explain why. The only relief that the tax court can grant in a CDP proceeding is a review of an administrative determination.  Here, the administrative determination was the levy can proceed. And there were some subsidiary observations made by the appeals officer. We're not going to call these factual findings. It was not that level of a proceeding. But the administrative officer considered her claim to the estimated payments and said no. We're aware of all that. The question that's being put to you is, doesn't 6330, by right, give the taxpayer an opportunity to decide whether the IRS was correct or not? The IRS made a decision. And they said, I owe you nothing. They said, no, you owe us, what, $34,000 and some other monies. And she says, no, I don't. That's the whole point, isn't it, of this language in 6330, which says you can get to the underlying liability? Respectfully, Your Honor, she filed a return. The liability assessed against her was the liability that she reported. She did not say, I owe nothing. She said, I owe tax on my IRA distribution. I believe that that tax should be more than covered by the estimated payments made by my spouse. Right. She did not say she owed nothing, and that's very important. But wait a second. When you said, we have a spousal agreement. This is coming from a joint account. If you look at this, you'll see that what I owe is more than dealt with. Now, I understand the IRS doesn't think that's true. I understand the IRS doesn't like her position. But isn't the whole point of the language in 6330C2B that you do get to address the underlying liability? The IRS doesn't get to just say, forget about it. You get to take that to the tax court and ask them to look at it. Respectfully, Your Honor, as you yourself observed shortly before, you may only look at a liability within the context of a collection action in 6330C2B. What she can say is, don't levy on me because I believe I don't owe, not please redetermine my liability. No, no, no. Well, then you explain to me what the court meant just recently in reading. You didn't get a chance to address it in your answering brief because it wasn't raised in the opening. But in the reply brief, they quote it, and I think they're right to do it. The court says a CDP hearing may involve not only collection issues, such as the appropriateness of collection actions, but also challenges to the existence or amount of underlying tax liability. That seems to be saying exactly the opposite of what you're saying. It's not just collection actions. They're entitled to challenge the existence or amount of the underlying tax liability. That is not what the statute says, Your Honor. Well, I don't care what the statute says right now. I'm trying to get you to respond to what the tax court thinks the statute says. You can say the tax court's wrong about Deagon, but then you'll have to say that right out. Do you think they're wrong with what they said, or do you think I've misquoted them? There are several things that they got right in Deagon, and there are several things they did not. What you have just quoted is an unreasonably expansive reading of 6330. We do not endorse that reading. What they get right in Deagon is, first of all, that there is no refund jurisdiction anywhere in a collection due process proceeding, and the courts have been unanimous about that. For the sake of argument, we're giving you that and just trying to focus on one thing right now. My question is one thing. The tax court has said that the IRS's position is rejected because the IRS took the exact position in Deagon, which it's taking now, which is that's an overly expansive reading of 6330. The case in Deagon is moot, and the tax court said, oh, no, it's not. It's not moot. They're entitled to have the underlying liability addressed now. That's right. And H-2B does not expressly bar it. It says it may also raise these other issues, so why is it the commissioner takes a contrary position? What the statute authorizes. These are two separate questions, and I would love for you to answer them. Okay, I'm sorry. I thought it felt done, but take them in whatever order you want. So what Deagon says is you're dealing with an abatement of a penalty for frivolous filing. There was no determination as to liability. The commissioner did not come in and say, Deagon owes nothing. Deagon's liability is zero. The day before you, right now, we say taxpayer owes zero. There is no liability to dispute. That's why this case is moot and Deagon is not. That's the response to the first question. The response to the second question is what C-2B allows a taxpayer to do, and this goes to Judge Krause's statutory interpretation question from before, is you may raise liability as a defense to collectability in the context of a CDP if you have not had the opportunity to do so previously, and in 6213, if you have filed a return and an assessment has been made against you pursuant to notice in demand, which is our facts here, you have not received a notice of deficiency because there is no deficiency. Now, let's be clear on the difference. Wait, wait, wait. Moore does not otherwise have an opportunity to dispute. So what other opportunity did they previously have to dispute the tax liability? Another CDP notice, Your Honor, and frequently in these cases, a taxpayer will first receive a notice of federal tax lien. They will have CDP rights that arise as a result. They can come to the IRS Office of Appeals. You don't go straight to tax court. You have an administrative determination first. You go to the Office of Appeals and say, this lien's wrong. You assessed the wrong thing against me. I don't owe this, and that would be your first opportunity to dispute. If you then were faced with a notice of intent to levy and you had already received that lien-based notice, that's your previous opportunity, and there is case law throughout the circuits that says that's your bite at the apple, and if you don't take it, you can't come back later. That's what that statute's referring to. I would like to speak to Judge Krause's interpretation of the statute, though. I've got a question for you first. Yes, Your Honor. Do you agree or disagree that she never got a notice of deficiency? We agree she did not. She was not entitled to one. She was not entitled to a notice of deficiency. That's correct, because a deficiency is not a liability. A deficiency is the discrepancy between the taxpayer's determination of their liability and the commissioner's determination. If you file a return and it's wrong, it's not accepted as correct, there's an audit and figures on it are redetermined, the commissioner makes a separate determination of deficiency, and you receive notice of that. You then can go to the tax court under 6213, and you can litigate what you owe. And there, there will be refund jurisdiction. Okay. She didn't get the notice of deficiency because her 2010 return said, I owe this much. And it was accepted. But she also says, I should get the credit for this other thing. So that's what your argument is turning on, is that instead of saying, I owe nothing on that 2010 return, she said, this is what I owe, but it's going to be, it should be more than offset by this other amount. That's correct. And that's why, in the IRS's view, she didn't deserve the need to get a notice of deficiency. The statute did not require one because there was no discrepancy. Okay. Subsection B comes into play and deals with that as a liability. Yes, but it does not create, the right to a redetermination of a deficiency is not pipelined through because there, let me explain some procedural steps here that maybe will put it in better context. At the conclusion of your deficiency proceeding, when your liability is agreed upon, if you owe, an assessment is made against you. In the second, the 6213 context where you are able to obtain tax court review following a notice in demand, you're looking at a situation where an assessment has already been made. So what you've got there is what's coming out at the end of a deficiency proceeding. Now, the assessment is always going to be present in a collection due process proceeding. And that means, effectively, that a lot of your prepayment rights have already been resolved and addressed, either by you submitting information or by the IRS making a determination for you or by you doing it through litigation or through an administrative proceeding. And your assertion is all her prepayment rights were satisfied. She wasn't entitled to anything else. She was entitled, at the time of her petition, to contest the levy. Yeah, because, in fact, you had said, I mean, you started this. The IRS said, we're coming after you. You started the process. And she said, I don't owe you that money. I've been trying to tell you I don't owe you that money. And then you kept... Respectfully, Your Honor, that's not what she said. She never disputed the amount of the tax. In fact, she conceded that fee. I know it's a little bit artificial. In ordinary conversation, we could talk over each other a little bit. And I'm confident it's frustrating for attorneys to get interrupted. And I apologize. I'm not meaning to be rude. But we've got to be able to interrupt so that we can get the questions in. Otherwise, skillful attorneys such as yourself will take the conversation someplace where it's not answering the question we're trying to put to you. So the question I'm trying to put to you is, when you say, she never said we didn't owe you money, I don't want to get bound up in semantics here. I understand their position very clearly to be NZIP does not owe you money, didn't owe you money, because at the end of the day, you who are pressing this offset position, at the end of the day, whatever money she owed for 2010 were more than offset by the joint account prepayment that was made. Now, is that, have I got that factually in error? The liability would have been more than absorbed by those payments had they been applied to her account. That is her position. Right. That is not an offset. I might be using a shorthand you don't like, but I understand her to be saying, because of that, I didn't owe them anything. When you balanced it all out, I didn't owe them anything, and I'm entitled to have the tax court look at their assertion that I don't owe them anything before they come in and start taking my property. That's the legal position I get that they're making. So if we can take that as a given. And phrase that way, that is correct. Yes, I agree. Okay. Because it is the levy that's being disputed. Don't take my property before we figure this out. Right. And the relief could be granted. Right. And then the assertion that they're making is, you did take my property. You went ahead and you started, I had refunds due to me, and you just kept that money. You went ahead and without even telling me you were taking my money, you took my money. I mean, your own brief says it's not in the record whether or not she ever received notices of this. And it wouldn't be in the record in a CDP. It's not relevant to a CDP. Yeah, but certainly it should be relevant to a sense of equity and fairness, don't you think, for the IRS? For the IRS. In the midst of a years-long litigation where you know the amount is being contested, and you started the litigation and are actively in it to say nothing to the person, nothing to the tax court, let the years tick by, and then when it's over, say, it's all moot because we took your money anyway. It's all done. Now, you can say she wasn't entitled to it or we would in the ordinary course do it or something. I hear you saying she's not entitled to it, but can you appreciate that if that's really how this played out, that that's more than a little troubling? You're positing a situation that is not evident on this record, which is that this was done in secret and that this was done through the... Your position would not prevent that from happening, it appears. Whether that's what happened in this case, it could happen. Here's why it would never be a secret or a surprise. If you don't get your tax return that you have, if you don't get a refund, you file the tax return, you claim a refund, no refund comes, you should receive a notice CP-49. But even if you don't, you don't receive your refund. The taxpayer in this case is a sophisticated, complex commercial litigation attorney represented by skilled tax counsel throughout the proceeding. If I'm that person and I don't get my refund, I call my lawyer and I say, what happened to my refund? You are on notice that something is going on here, and whether or not you actually receive the notice, and there is a notice that you do receive, we don't know on this record because it's not relevant to the determination in the IRS Office of Appeals or the Tax Court whether those notices were sent. But they are sent as a matter of course in the case of offsets, and when you get that first notice, that's when you say, what's happening here? So it's really, the argument is, you should have known. You should have known we were, even while we were contesting this and were fighting it in court, you should have known we were keeping your money. And if you've known that and if you've been paying attention, nobody should feel sorry for you that at the end of the day, nobody's ever going to look at whether we got this right or not because we already got your money. Your Honor, it keeps referring to things in that framework, and I would like to try to shift the framework because I see that the Court is concerned with the equity of what appears to be funds withheld from a person who has a claim of entitlement to them. The $50,000 of estimated payments were credited towards an offer in compromise of five tax years, three of which were joint liabilities. I refer the Court to pages 192, 196, and 199 in the appendix, which illustrate that tax years 2007, 2008, and 2009 were joint liabilities of both the husband and the wife, and they exceeded $480,000 in unpaid balance due. He had another $665,000, give or take, for 2010 and 2011. He sought to compromise all of those liabilities, and the $50,000 was credited toward that compromise. Right, and the assertion is that that was done in error, that he told you, that's not my money, don't do that, that's my wife's, that's my wife's money, don't do that. Respectfully, Your Honor, he only came to that position long after the offer in compromise had been accepted. He had received the benefit of those funds, and so had she, Your Honor, and this is, of course, an important point. I don't want to express concerns about the decision here to apply the funds that way. Isn't the whole point that what we are starting to get into, this discussion about whether the liability is really owed, that the tax court has not had an opportunity to do that? Respectfully, Your Honor, what I'm describing right now has nothing to do with the 2010 liability, as reported by the taxpayer, as set off by her overpayments, or as considered in any context in the CDP. I'm addressing the elephant in the room, which is where the $50,000 went. How can it not have something to do with the 2010? That's part of her assertion, is that it has everything to do with it. It's on that basis that I'm saying I don't owe you any money from 2010. That's the argument that she's making. And now we're engaged in a merits argument, which is the very point that I take them to be making, which is we want the tax court to do that. The statute gives us the right to have the tax court do that. And, in fact, the only reason that we're being deprived of the right to do that is because even though this debt was contested, they kept my money anyway. They unilaterally decided we're keeping your money, even though the debt is contested. How is that? And when the tax court looked at it, it denied summary judgment to the IRS, and the IRS kept taking the money until it had it all, and it said, moot, you're out of court. Now, you're right. I don't think that's, like, yeah, that's a mighty big pachyderm in the room. Because, Your Honor, and you've raised at least three different points that I'd like to address, just in those statements there, but let's begin with, first of all, are we double counting that $50,000? If she's saying, I don't, and we won't get into the merits because the appeals officer didn't and the tax court didn't. You're looking at two separate issues here, each of which offends your sensibilities of equity, as I read it. One is she did not get the benefit of these $50,000 and wound up owing tax that she thought she should have covered. And secondly, that the IRS, by operation of law, was able to take overpayments that she voluntarily made. Now, one is obligated to overpay their tax. Took account balances year over year and applied them to her debt, which had been a statutory right of the government since the 1940s. We've got a separate issue here about whether under the common law of offset, whether that applies to the proper or not. But I understand you disagree on the merits, but I think Judge Jordan is asking, if there's at least an arguable dispute over whether that is within the scope of the IRS's, you can call it offset or whatever else, power, whether there's a court that has the power to review that. The refund procedures are dedicated to that context. But there is no refund capacity here. I mean, if what you're saying is, you know, in an alternative universe, if she'd filed for that, then we would be talking about it. But we're in the universe we're in, and in the universe we're in, you started the levy process. That was the route that you chose. That's the route they were going down. And so, you know, the sense of equity, yeah, you're picking up the right signal. I am offended, but not by some belief that she's right. The offense against equity sense that you're picking up is that the IRS's position seems to be, no court ever gets to look at this, period. It's just off the table, because even though we start the process and it's contested, it's not agreed that, you know, you can offset this money, we can take it and we can deprive the tax court of the opportunity to do the underlying liability assessment, which the statute says they're empowered to do. So it's that that I'm trying to get you to speak to that. How is it that the IRS feels like, yeah, once we take your money, even though the statute says underlying liability can be assessed, it's game over, we're done. The IRS can always moot a proceeding in tax court by granting the relief thought. Well, the relief thought here is a contest to a levy. It's the levy, Your Honor. It's a proceeding to contest a levy. And the dispute as to liability is only through the lens of the levy. Why can't it be, why can it not be that she's entitled to a declaration? There's declaratory judgments all the time across the United States of America that determine rights, and based on that determination of rights, people can go and do other things. I understand, based on my discussion with your colleague, Mr. Derman, here, that she wants the tax court to do what the tax court said it could do in Vigon and say whether or not she's got a right to this or not. And maybe they'll agree with you, and maybe they'll agree with him, but they should decide that. And then if they agree with him, she's got a declaration that the IRS has wrongly deprived her of property, and she can take that to the Court of Federal Claims, or she can take it to the U.S. District Court and say, they took my money, make them give it back. What's wrong with that analysis? Two points. First of all, there are provisions in the Internal Revenue Code that grant declaratory judgment authority in the tax court. 6330 is not one of them. A tax court cannot issue a declaratory judgment under 6330 with regard to liability. So we can look at them and maybe draw an expressio unius inference. Yes. So I'm going to confuse the numbers. The one that immediately leaps to mind is the provision to decertify a qualified plan under ERISA. Do you know the numbers? I apologize. You can follow up with the court. Yes, Your Honor. I will share that. But I have to say, you're starting to make me question whether Green-Tapiti is right, because, look, I know this is not Article III, but, you know, in ordinary litigation, the Supreme Court has made very clear, if something's moot, only when it's impossible to grant any effectual relief, whatever. Even in Chafin v. Chafin, there was a slight chance that a child might eventually be brought back from Scotland, and only in that case would the judgment be enforceable. The court said, well, it could happen that this judgment would do some good. But here, Judge Jordan has outlined a very plausible scenario in which the judgment of the court in the CDP proceeding winds up, granting relief later in the Court of Claims of the U.S. District Court. So it doesn't seem like it meets ordinary mootness standards, and Green-Tapiti certainly shouldn't reach that far. This is the second point that I wish to make in response to Judge Jordan, and that is that the mootness comes in the 6330 context, and the Fourth Circuit in the claim observed this as well, that when you have a liability that is full paid, jurisdiction to review the underlying tax liability does not provide tax court jurisdiction over independent overpayment claims when the collection action no longer exists. That's our circumstances here. That's the Fourth Circuit's opinion in the claim, following Green-Tapiti. And it's correct in the context of 6330. It does not foreclose remedies to seek refunds in other contexts. So if she goes to court and files in district court and says, they took my money wrongly, can she fully expect you to raise a statute of limitations defense? Today, yes, but not originally. Well, so, and the reason that time has passed is because you guys just kept, you know, you kept that process going until you had all her money. So now the IRS gets to play the clock out, keep the money, and then say statute of limitations. Respectfully, Your Honor, no one was playing a clock. We only offset such overpayment proceedings. One could look at it and wonder that. One could say, you know, I'm not attributing ill motive. You're doing what you're doing because you've got a real fight, and maybe you're going to have to levy something. But the practical reality is you play this out for several years, and no court ever gets to decide whether what you did was lawful and proper. Here are the circumstances under which that could have been averted. In the instance of the first set off, where's my refund? That's when you can full pay and have all of your refund suit remedies available to you. This is one of the questions that the court asked about in the letter. If, in the alternative, she did not elect to full pay and then enable herself to recover the full amount of payment, she can at the very least bring an administrative claim for refund within two years of full payment. That 6511 has a two-year look-back period. You can only recover the tax you have paid within the last two years. So your assertion is, if she'd given us the $34,000, then she could have fought it. That's the floral rule, yes. She could have done that, even though her assertion is, I actually owe you nothing. That is the general assertion in a refund suit. Can I take you back to some questions that Judge Krause and I were asking your friend on the other side? Can we construe the filing of this action as an informal claim that a later deficiency proceeding would relate back to the time of this one, such that it wouldn't be untimely? So if we can't do this in CDP, then at least the taxpayer has the ability to come back later. You're shaking your head. Why? Because the liability was not full paid at the time that the suit was brought. And full payment of a liability is a prerequisite to a duly filed claim for a refund. That's a merits issue of whether the offset was proper. It is a jurisdictional issue, Your Honor. It is a jurisdictional issue for a refund claim. Why isn't it a full payment once you've taken the offset? It is full payment after the last offset in 2019. She then had two years to file an administrative claim for refund. However, because that last offset was not preceded by other offsets in the immediately preceding years, that amount is the only amount that she could have recovered. The two-year look-back period the day after that would not have caught any other payments. Those were earlier. We were not running out of clock. She made overpayments in the years that she made them. We set them off as a matter of law, as is the right under the Internal Revenue Code. She had a right to bring a refund claim with the IRS as of full payment, which took place in November of 2019. Which still wouldn't have gotten everything because of what you just said, right? Because of the pacing of the payments, which was not within the discretion of the IRS. What you're describing is a system that, if she's right, prevents her from ever having her rights addressed. She never gets her rights addressed under the system that you've described because she believes she owes nothing. And you say, no, give me $34,000 before we'll even consider it. Or you wait and we'll take it a little bit at a time. And then when you do finally hit that amount, you can get the last $10 because that was the last overpayment, but everything else is gone. Except $20,000, yes. I'm picking a number out. Or you think you have a right to have the underlying liability fixed, but once we've got all your money, you're out on mootness. In all three of those circumstances, you're out of luck. Your refund suit is not moot. Your refund suit is not moot. Your refund suit is now ripe when your CDP is moot. Your refund suit for the last payment. For whatever you can claw back. Now, on these facts, there was only one payment within the two-year look-back period. On other facts, there might be different amounts. It depends on the overpayment. But when the CDP is moot, that is when the refund claim is ripe and you need to file your administrative claim for refund then, and your CDP petition won't work for that purpose because you have not made full payment by definition. You are there in the tax court to dispute the collection of an existing liability. When that liability is full paid, then you have met your requirements under the floral rule to make the administration. Let me try to come at this a couple of different ways. So 6512B, it looks like it's in the nature of a counterclaim, and counterclaims ordinarily survive. And you're saying there's something specific about the jurisdiction here that makes it go away. Now, we can talk about the extent to which we should be analogizing the constitutional mootness, but we measure jurisdiction at the time the suit is filed. You're not disputing that there was jurisdiction at the time the suit was filed. There was. And then in ordinary suits, we say there is a heavy burden to say that jurisdiction that was there properly went away later because of mootness. Now, there's a bunch of mootness case law. Again, this is not classic Article III mootness. You might think we would look to it. It says, look, if you can undo the earlier judgment, and that will have effects in the real world, then something survives mootness. Is there a reason other than mootness why we should read this as destroying jurisdiction? If the officer said it never happened, et cetera, you're not saying that there would be a lack of power on the part of the tax court here to order the relief that Ms. Zook was seeking, right? Your argument is really a mootness argument. It is a mootness argument, and there are two lines of cases that we cite that explain how, and the courts have been unanimous on this point, that the CDP is moot where the parties agree there is no unpaid liability on which to base a levy. We must look through the lens of the levy. In circumstances where the liability is full paid, as here, as in Greensboro Petty, as in McLean, as in DeRocchio's, there is nothing to collect because the liability has been paid by the taxpayer. And that is certainly going to be the case when you agree, okay, taxpayer says the amount of the debt is $30. We say the amount of debt is $30. That's undisputed. And then taxpayer paid $50, and we agree $50. In those situations, yes, it's going to be moot. The problem we have here is we have a dispute about these amounts. And so I wonder why is it you can be so confident in areas where there's a dispute about propriety of the offset, or whatever you want to call it, that you can confidently transpose mootness from the undisputed context into the disputed context. Well, first of all, there is no dispute as to the propriety of the offset. They are legally permissible under section 64. I know it's awkward, but you can't talk over us. Someday I hope you'll sit here, and maybe I'll get a chance to appear before you. And when that happens, I promise, when you start talking, we'll stop. This is the Black Law Dictionary definition of an offset. I believe, actually, it reads along these lines. Set off as a mode of defense by which the defendant acknowledges the justice of the plaintiff's demand, but sets up a defense of his own against the plaintiff to counterbalance it, either in whole or in part. In other words, I might have been quoting you from a case that's quoted in Black's Law. You have to acknowledge for it to be a set off at common law. You've declared that the statutory section you're relying on is a codification of common law of set off. Well, that's what set off means. Set off doesn't mean I get to take your money when there's a disputed debt. It means when there is an undisputed debt, and I acknowledge that I owe you that money, and you acknowledge that you owe me this money, when those undisputed things can be put off against each other, that's a set off. That's not the circumstance we've got here. The Seventh Circuit in a pretty famous case, Judge Easterbrook said, if you resort to self-help, private party, by taking money that's in dispute and saying I'm setting it off, that's just plain old conversion. It's tortious. Now, the government's not, you know, a private actor here, but why should we treat something that would be tortious in the private sector as perfectly fine when the IRS, the government, is doing it to you? It's a disputed debt. It's not an undisputed debt. It is a debt that she reported on her own tax return, and we accept it. We're just going around and around on this. Please stop going to that. You've acknowledged, and I think you have to acknowledge, that, yes, she reported on her 2010 that she owed money, but she also said the money that are in here with the spousal liability, that more than makes up for it, I don't owe you any money. That's a dispute. It's not an undisputed debt. So how can you run to the undisputed debt context and call it set off? As a matter of accounting, is how. Well, I'm not sure. I'll just tell you as a matter of law, in the common law context, which you rely on, that's called conversion. When there's a disputed debt, you don't get to set it off. It's only when you, the party claiming the money, are prepared to acknowledge, yes, you're right, that's the sum of money, and here's my sum of money, now let's work them out and just do the math. She says it's not $34,000, it's zero. You say it's $34,000. That's a dispute. I am just flummoxed with the position that the government is taking that that's a common law set off. In the world, you've said it's a statutory codification of a common law. You've never said, and I don't think anybody's ever claimed, that the IRS has some power beyond what you've already asserted it is. It's the common law idea of set off. But that's not the world you're operating in. You keep saying it's undisputed. It is disputed. If it were undisputed, none of us would be here. Let's make perhaps a more precise term, self-reported. It is self-reported, and in that sense, she is not disputing the number. Why would he freeze it at that point in time? Because she does dispute the number as soon as you look to the cover letter saying this is how a prepayment should be applied, right? You're saying just look at the initial return, and there's some amount there that we agree was owed, but then there's the prepayment that nets that out. Why do you keep pointing us to just the filing without acknowledging that, from her perspective, it was netted out? Well, from her perspective, it was, Your Honor, but from the perspective of the IRS, those credits were not on her account. That's a dispute, right? But that's different from a dispute as to liability. That's a dispute as between the application of credits among spouses. No, that's a dispute as to liability. Ms. Aveda, maybe we've gone around on this enough that there's just no kind of getting on the same wavelength because you keep wanting to treat this as if the IRS were solely in control and power to say what is and what isn't. The whole point of having the tax court in existence is to keep an eye on the IRS, and if the IRS steps out of bounds to say you're out of bounds. So if the IRS says no, no, that's our money, that's not supposed to be the end of the game. That's why in this levy context, which I'll repeat, you started the process. It's indisputed that there was jurisdiction at the get-go. The only reason we're having this fight is because of your assertion that we are allowed to take that money and no one can stop us and no one can review it. Done. That's the way it goes. And the courts have unanimously found that that is a function of 6330. Okay. The Ninth Circuit, the Fourth Circuit, the tax court repeatedly. I really don't think any of them have said what I just said. What they have said is we agree with Greene to Petty that once that is done, then it looks like the case might be moot. But that doesn't really answer the question about is that jurisdictional? Is it prudential? In the Wilson case and the Byers case, the Second Circuit found that it is. In the Roush case, the Fourth Circuit found that it was. In the McLean case, it is mootness as an effective exhaustion of jurisdiction. As an Article III matter? Is it moot as an Article III matter? The tax court is not an Article III court. But it's mootness. But it's mootness to interfere with our ability to review as a jurisdictional matter. And mootness case law is very suspicious of a party's ability to manipulate mootness, voluntarization, and likewise, where courts indulge every ability to find something, not moot, because of the ability to use it strategically. It seems like, not Article III, if we're going to import the principles here, we want to have some real skepticism about the IRS's ability to unilaterally moot these things. By granting the relief sought. Granting the relief sought? Yes. The relief she seeks is how is the money. No, Your Honor. Not in the CDP. That is her underlying claim. But the CDP only provides jurisdiction to review the propriety of the levy. Well, that's a pretty neat trick to say the only thing you really ever wanted was to stop our levy. That is what the statute provides, and that's what the court's certain. I think the thing she always wanted was to have her money, or what she thinks is her money, and to have some court look at it. But I'm pretty sure we've got the argument. I do want to ask. You are not disputing that at the outset of the lawsuit, the tax court has jurisdiction. Assume this is before any settlement. The tax court has jurisdiction to review the levy, and has jurisdiction to review what is functionally a counterclaim by her. Under, where is it, 6330C2B, for the challenges to the existence or amount of the underlying tax liability, or the opportunity to dispute it. Question the characterization that it's fundamentally a counterclaim. It is her affirmative claim. But there's jurisdiction to review that. The jurisdiction is to review the determination of the Office of Appeals. That is one issue that Appeals may entertain. She may raise it. But the determination of Appeals is what the tax court has the authority to review. And here the determination of Appeals was the levy may proceed. And if there was liability as a basis to proceed on the levy. The liability, and Judge Jordan is displeased with this, but this is how it functions. The liability was assessed in the numbers that she reported. The application of payments to abate the liability offends you in several senses. But those are separate questions from the validity of the assessment which the tax court did concede here during the hearing. Indeed, those are separate questions. And the real question we are having to wrestle with, and it's troubling, is the IRS's assertion that we can moot this without anybody ever looking at it. We can moot it. And that's the end of the matter. It does not need to be the end of the matter, though, as I explained. From the moment of last payment, a refund claim is right. You had mentioned earlier just walking through the statutory construction approach that I had posited earlier. Why shouldn't we look at the way 6213 functions and interacts with 6512 to see an avenue where under the express terms of the statute that the tax court retains refund jurisdiction? Because that's not the determination that it's reviewing. In a deficiency proceeding or in a challenge to an assessment, you're reviewing the amount you owe. In a CDP proceeding, you're disputing whether you can collect it using a particular means. And the dispute as to the amount you owe based on application of payments, based on possibly a dispute as to the amount of the liability, which I assure you here we did not have. The amount of the liability was agreed upon.  But the outcome of the CDP proceeding… Is that a distinction without a difference in your mind? Based on how the assessments were accounted for. Well, you know, I don't pretend to be an accountant. I don't pretend to be an accountant. Nor do I. But the notion that you can say the amount is not in dispute is just completely flummoxing to me. But please go ahead. May I continue? Thank you. So the issue being considered in a collection due process administrative proceeding is can this levy proceed? I understand your argument that it's focused on the levy, not the separate provision that says you can also review liability. We may disagree about that. But explain to me, in terms of the refund jurisdiction of the tax court, when we have set out in 6213 two different paths that Congress has created, one of which, with the notice of deficiency, allows for review by the tax court with refund jurisdiction, and the other, which has the notice in demand, says that the notice that you're getting under that section, which seems to be our case, does not apply. It's not treated as the notice of deficiency for purposes of 6512A, which says if you already had a notice of deficiency, then you're prohibited from going after another refund in the tax court. Right. And look at what that says. That doesn't actually provide you access to tax court. What that's saying is if you're in the notice of demand universe, if an assessment has been made against you, you're not coming into a prepayment forum under 6213. Only in the context where you're entitled to a notice of deficiency can you get there. That's your ticket to tax court, as you framed it before. If you have notice in demand, that's not a ticket to tax court. That means you have an assessment against you. You do not have the right to petition the tax court to redetermine a deficiency if you do not receive a notice of deficiency. If, instead, you receive a notice in demand for payment of a liability that you have reported, even if, as Judge Jordan observed, you dispute the application for credit for payments to that liability and you think that the amount you reported should not be the amount you owe. You then have – We've had you up there for a long time, but I did want to – Is everybody okay? You okay to keep going? If you need a break. Yeah, seriously. You could take a bathroom break. I could do this all day. You can do this all day? Okay, good. Got another four hours. Why isn't there – I mean, the B-1, 6512B-1 says in this situation, if the tax court finds there's no deficiency and the taxpayer has made an overpayment, the tax court shall have jurisdiction to determine the amount and I – You're reading 6512B-1 there. That's 6512B-1. Yes, that's correct. And that is incorporated in a deficiency proceeding. But if you're looking at 6213B, where it says notice in demand is not a deficiency proceeding, that provision isn't applying. So it does not get you where you want to go. And 6512B-1 is cross-referenced in deficiency proceedings, in innocent spouse proceedings, and in interest abatement proceedings, which required separate amendment to each of those statutes to create the cross-reference. We detailed this in our brief. 6330 doesn't reach in any context to 6512B-1. It all begins to 6213B-1 saying that the notice that's provided shall not be considered as a notice of deficiency for purposes of 6512A, not 6512, and not 6512B, limited to 6512A. Why doesn't that leave 65B entirely intact in terms of the tax court's power to review and determine the amount of the overpayment and to order a refund? You are not, in the context where you've received notice in demand, you are not going into tax court in a deficiency proceeding. You're not activating the jurisdiction of the tax court to review the commissioner's determination of a deficiency under 6213. But you can end up there in different ways, and one is in a CDP proceeding. An assessment, as I said before, is a different beast. And in a CDP proceeding, you're not redetermining a deficiency, not even a deficiency where you've received notice in demand and it's assessed based on information you've provided to the IRS. There's not a camel's nose under the tent wholesale incorporation of the deficiency jurisdiction of the tax court into the power of an administrative officer to entertain a dispute as to liability in a challenge to a levy. That seems to leave totally toothless the provision in 6330 that says, if you're in that situation of 6213B1, which looks like it's pointing you to 6512, if you're in that situation, then you're supposed to be able to challenge liability in the context of CDP proceeding. That's right. So it's not totally toothless. If you make a valid challenge to liability there, then the appeals officer will say, I do not sustain this notice of levy. This levy cannot proceed. This is not money that this person owes. Or there's a question as to whether this person owes this money. Don't collect it. And if it says that there is not liability, then why aren't you, by virtue of these cross-references and the power of the tax court being left intact for 6512B purposes, the tax court has that power. It has refund jurisdiction. The tax court does not redetermine the deficiency in a CDP where the appeals officer has sustained a levy. It reviews the determination of the appeals officer. Or appeals discretion. The appeals officer makes a determination of both. Whether the levy can proceed. The levy and, in the case of someone who didn't originally get a notice of deficiency, liability. It does not redetermine the liability.  It doesn't go back into the math. I'm not sure I understand that. When I read 6330C2B, it says, the person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency. Yes. That seems to me to be saying not, you stop the levy if it's, it seems to be saying, once the IRS chooses this route, once they start that ball rolling, you, the taxpayer, if you didn't get a notice of deficiency, and everybody agrees that's for the petitioner's stance here, you, quote, may raise at the hearing challenges to the existence or amount of the underlying tax liability. Period. So, it's not just like a, in the context of this levy, it is, once we bring you here, you get to argue about your underlying liability. But that is literally a redetermination of liability, right? You're reviewing the determination by the appeals officer. Respectfully, that is not a redetermination of a liability. That is an examination of the existence or amount of a liability. You're not coming out with a new number at the end and saying, actually, you owe this instead. What you're doing is you're saying, because that's not the power of the appeals office. Well, I'm not so much worried about the power of the appeals office. I'm worried about the statutory language, which doesn't seem to have any of the nuance you're putting on it. It seems to be saying straight up, once we get you here, you get to argue about your underlying liability. It doesn't have any ifs, ands, or buts associated with it. It seems to be saying, once you're here, you, at your discretion, taxpayer, get to raise these things. But the only relief that can be granted you by the appeals officer is no collection because there are defeats as to liability. And that's the decision reviewed by the tax court. And the tax court does not have the ability to go through that, make findings of fact in the first instance, and make a redetermination of liability. I understand your position, but I'm just not seeing it in the statute. I direct the court to the language in Greene-Zapetti, explaining the structure of the statute, explaining how Congress could not, as we said earlier today, Congress did not try to put an elephant in a mouse hole here. They didn't seek to displace the long-standing framework of bringing refund suits or the existing decision-making procedures. It doesn't seem like a displacement so much as perhaps an acknowledgment that sometimes the IRS gets it wrong, that the IRS gets it wrong. This is a safety valve. If they haul you in to tax court or they start to levy against you, they start doing stuff to take your money, and they didn't give you a notice of deficiency, here's the safety valve. We've got obvious questions, both about whether Greene-Zapetti is right and if it's right, how far it reaches. This is your chance to talk to us about what problems or havoc would be wrought if we disagreed with our sister circuits and either rejected Greene-Zapetti outright or read it narrowly enough to allow these. So I understand your position is it's right, we should read it as broadly as the other circuits, but talk to us what would happen if we disagreed with other circuits and the tax court is having to apply Greene-Zapetti in cases that aren't in the Third Circuit but not in cases that are in the Third Circuit. The tax court does not believe itself to have refund jurisdiction in this context. I'm not sure how the court could establish a means for it to assert that jurisdiction. We do this in immigration cases all the time. We get cases for the Board of Immigration Appeals. The Board of Immigration Appeals has said, okay, we think that we can't review these claims. And we say, no you can't. And when the Board of Immigration Appeals has a case that's going up to the Third Circuit, it applies Third Circuit law. Is there a reason why the tax court couldn't do the same thing that the Board of Immigration Appeals does or that it would really distort the structure and functioning of the tax court to apply Third Circuit specific law and assert jurisdiction here and not in other cases? I do not believe, as in the district court context, that there is a means by which the commissioner can select a forum within the tax court. The tax court rides circuit. It goes nationwide. And a taxpayer's appeal lies to the circuit where they reside. Okay, but when it's riding circuit, is it riding circuit to the Third Circuit and hearing specifically Third Circuit cases? It will be in New Jersey. It will be in New Jersey. Yes. So we will know when it's coming to New Jersey. We're within the Third Circuit. These are cases that are going up to the Third Circuit. So it has the ability to foresee. These cases will be governed by, they will ultimately be reviewed by the Third Circuit. Yes. And that's, I mean, with the BIA, they're not riding circuit, but there are different panels. Some of them are Third Circuit panels. And those panels that are within the Third Circuit that have cases going up wind up applying precedents that maybe the Department of Homeland Security doesn't like. But we've told it, apply these cases. And they do, even if it's under protest. Why couldn't the tax court do the same thing? The tax court does apply Third Circuit law in cases where appeal lies to the circuit. But it primarily applies its own law. And if one circuit were to say, your governing precedent for the past 2006 to 2023, almost two decades, is incorrect, and all of the circuits that have agreed with you are also incorrect because there are some gaps in the statute, and here's how we choose to fill them, that certainly would, I think, create a carve-out and an unequal administration of the tax law. And it would unfairly, I think, privilege certain taxpayers over others whose situations were an accident of their domicile. One last framing. In your briefing, you seem to be arguing that there's not jurisdiction because of 6402A and how 6402G works with that. And because of 6512B4. And I would like to explore that with you for a minute. First, as to the 6402G argument that you made. That says that there was, and I, yeah, I'm sorry. You've got a remarkable mastery of this, and it's probably not fair to expect you to know them all. This is 6402A. It's the set-off one that you're relying on. And 6402G, which you point to in your brief, says. Unavailability of judicial review. Right, right. You say there's jurisdiction stripping there. But that 6402G, by its terms, says, no court of the United States shall have jurisdiction to adhere to any action, whether legal or equitable, brought to restraint, et cetera, et cetera. Authorized by subsection C, D, E, or F of that subsection, right, of that 6402. And when I look at C, D, E, and F, none of those have to do with this case. Paid income tax. Unemployment. Pass-through child support. Unemployment compensation. None of those have to do with this. So I'm not sure I understand. It doesn't look to me like 6402G is doing the work here that the IRS wants us to think it's doing. This Court has so held in the Sunoco case, and that's what we cite here, that the subsection B-4 of 6512 deprives the tax court of jurisdiction to restrain or review any credit or refund under section 6402. That's the holding of the Third Circuit. I'm sure we didn't mean to override the statutory language because we couldn't do that. I believe it's consistent with the statutory language. It's technically true. It is subject to 6402. It's just 6402 is limited by its terms as far as the jurisdiction stripping to those four things. There's nothing besides those four things. The statute seems clear to say if it fits in one of those four buckets, you don't get to touch it. And this clearly doesn't fit in one of those four buckets. I mean, you'd agree with that, wouldn't you? It's not dealing with debts owed to federal agencies passed through child support? A debt owed to the IRS is a debt owed to a federal agency. That's your argument. To the Department of the Treasury. Okay. When you write your tax check every year, you pay it to the Treasury. Okay. Okay, got it. Good thinking on your feet. That's the first time we're hearing that. 6512B-4, that says the tax court shall have no jurisdiction under this subsection to restrain or review any credit or reduction by the secretary. So no refund. Right. No refund jurisdiction over assets. But I understood you to be saying that 6512B doesn't apply under 6330 at all. It does not. Then how can you have it both ways? You can't. You can have zero. There's no refund jurisdiction and there's no ability to challenge a set-off. Well, that's what I'm struggling with because it seems like you're saying, hey, in the 6330 context, pay attention to 6512B-4 and consider jurisdiction stripping. And then in the next breath you're saying, but don't consider any other pieces of 6512B because they don't apply at all. Well, what that means is if you are in a proceeding, a deficiency, innocent spouse or interest abatement proceeding where there is properly refund jurisdiction, the tax court still could not reach the question of the offset. Because the language of 6512B-4 is under this subsection. Right. But there's no other subsection that would grant an administrative officer entertaining the propriety of a levy to contest or to upset an offset. They're not even exercising judicial power. Well, what about 6402G itself? Because if you're saying that we're actually in the world of subsection D, collection of federal agencies, the last sentence there says, this subsection does not preclude any legal, equitable, or administrative action against the federal agency or state to which the amount of such reduction was paid. Yeah, you can still sue for a refund. You can bring a refund suit for monies that were offset, as in this case, as the taxpayer here would have been entitled to do upon full payment. And 6402 does not preclude that. And what would be equitable and administrative actions that are available? In this context, you would have to start with an administrative claim for refund first before your refund suit was right. How about an assertion of administrative rights under 6330C2B? There are no rights to be established under 6330C2B. There is merely a challenge to liability that can prevent the effect of a levy. It sounds like an assertion of a right done in an administrative context. That has not been our reading of it. That is not the reading of it that the tax court has in Green-Copetti. That has not been the reading of it in the Ninth Circuit, in the D.C. Circuit, in the Fourth Circuit. Do you have a case you can point us to that says that subsection D, the collection of debts owed to federal agencies, encompasses the IRS and not outside agencies? At this moment, I do not. Okay. Anything else? Camille? No. I guess I would just raise the question. The way D is written seems to talk about such agency and then what the Secretary should do as regards that agency, which certainly makes it sound like the agency is different than – In a lot of instances, it can be. In a lot of instances, it can be. The Social Security Administration, the Small Business Administration, there are a lot of treasury offices. It seems like the IRS is asserting – it's like talking about itself in the third person there. It's not describing itself with particularity. It's a broadly drawn category to include multiple agencies. We've done Yeoman's work today. Ms. Aveda, thank you very much for staying up there and taking the slings and arrows and answering all our questions. Appreciate it. Mr. German, we'll have you back in three minutes on rebuttal. Thank you, Your Honor. I think what my colleague was wrestling with in her time was this issue of disputed versus undisputed debt, and that kind of is the crux of the argument. The case is not moved for that reason. The taxpayer has the – not obligation – has the ability to raise this issue under the statute. Nothing prevents her from doing that. The tax court acquired jurisdiction over that issue because it was discussed and raised in the administrative proceeding and then dealt with in the notice of determination. Once jurisdiction attached at that point, the court had jurisdiction to decide the case. So I take part of her argument to be that liability is a term of art in this context and that liability is limited to what is identified in a taxpayer's return as the amount they think they owe. It's not, as you were just using the term a moment ago, it's not sort of the overall debt that nets out prepayments and the like. What's incorrect about thinking about liability as a term of art that has that more narrow meaning? So I think in the tax court there is some dispute on that very question. There are some cases that say that it is liability. There are some cases that say that it's not a liability, that the application of payments is not the same as a change to the other items on the return. Our position is that liability, this specific statute, 6330, is supposed to provide the taxpayer an opportunity to fix the liability, fix what is actually owed to the government before the government takes her money. And I think it's somewhat of splitting hairs when we say, well, she reported the liability on this line of the return, but then we get to ignore the next ten lines of the return. At the end of the day, she filed a tax return that was reporting a refund. The IRS changed the tax return. They accepted the parts that they liked, the additional income and additional tax, and they rejected the parts that they didn't like, the application of these joint payments. There's nothing in the code or in IRS practice and procedure that would permit them to do that. So whether you're making the argument that is it a liability, is it an application of payment issue, I don't think that ultimately brings it over the line. I think the question still remains. I think in the tax court there might be cases that fall on both sides of the line, but I think the tax court still has the obligation to reach the issue. I don't think the issue is ever moved. Can you answer the argument that there's no unfairness here because your client, anybody who's looking at the mail, I guess we don't do that anymore, but looking for a refund hit in their account sometime after April 15th, knows if it doesn't come and is on notice effectively that there's an offset going on. And that in the ordinary course they do send notices about offset. And we should probably say, hey, that's the ordinary course. We can assume it happened here. You know, a lot of the argument here has been about, and your briefing has been about, essentially this is not fair, it's not right. Speak to that assertion from the government that she knew what was going on. She didn't take steps then. She shouldn't be heard to complain about it now. Yes, sir. So I guess what the government would be suggesting the remedy for that would have been to file administrative refund claims every year. Well, one, adjust her. Or you could have ponied up the money all at once instead of waiting to give it to them by overpaying your taxes each year. You could have showed up with your 34K and fought the fight. Right, but that's the crust of our original dispute with the government in the first place, that we don't actually owe this money. In terms of the equities and the fairness, I don't think it would be fair to require the taxpayer to full pay a liability. She filed a return that showed a refund. There is a procedure by which the IRS is supposed to follow to get from the refund shown on the return to the deficiency shown on the collection notice. It's not fair to her, to the taxpayer, to have to pay up, and my colleague mentioned that our client is a lawyer and something like that. We understand from your perspective she's a stay-at-home mom with a couple of kids. From the government's perspective, she's a sophisticated lawyer. Exactly. So I think at the end of the day, I don't think Section 6330 or when Congress wrote Section 6330, that it contemplated this scenario in which the taxpayer is forced to pursue a refund claim. When Congress specifically gave the tax court the ability to review the underlying liability and tax work, it didn't intend to bifurcate the two issues, the collectability and the liability. All right. Good. Okay. Thanks, counsel. Appreciate it. Thank you, Your Honor. We'll ask for a transcript of this to be provided to us, and we'll ask the government to help us with that. All right. We're in recess.